773 So.2d 350 (2000)
Walter Ray SELLERS, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1998-KA-01107-COA.
Court of Appeals of Mississippi.
April 11, 2000.
Rehearing Denied July 25, 2000.
Certiorari Denied December 14, 2000.
*351 J. Brice Kerr, Pascagoula, Attorney for Appellant.
Office of the Attorney General by Charles W. Maris Jr., Attorney for Appellee.
BEFORE McMILLIN, C.J., BRIDGES, AND PAYNE, JJ.
McMILLIN, C.J., for the Court:
¶ 1. Walter Ray Sellers was convicted of the felony of shoplifting, third offense, in the Circuit Court of Jackson County. He has appealed that conviction to this Court and presents two issues upon which he seeks to have that conviction reversed. The issues raised are (a) that the prosecution failed as a matter of law to prove that the items Sellers was accused of taking belonged to the business named in the indictment, and (b) that one of the instructions requested by the prosecution and given by the trial court impermissibly shifted the burden of proof to the defendant to prove his lack of criminal intent. As a third issue on appeal, Sellers argues that he could only be punished for first offense shoplifting because the jury was not permitted to decide the issue of his prior shoplifting convictions. For reasons that follow, we find these issues to be without merit and affirm the conviction and the resulting judgment of sentence.

I.

Facts
¶ 2. Sellers was observed by a private security guard to be acting suspiciously while walking the aisles of a business in Pascagoula known as Jerry Lee's Grocery. The guard, concerned about Sellers's behavior, began to monitor him on the store's closed circuit television security system and observed Sellers remove an item from a shelf and place it in his pocket. At that point, the guard left the observation room and approached Sellers in the store. Sellers inquired of the guard as to the availability of some product with which the guard was unfamiliar. When the guard asked about the item placed in his pocket, Sellers claimed that he had put it back on *352 the shelf. The guard, in an attempt to verify that fact, asked to frisk Sellers, whereupon Sellers pushed past the guard and attempted to run from the store.
¶ 3. With the help of another store employee, the guard restrained Sellers and retrieved a baby's pacifier, still bearing a price tag and enclosed in protective plastic coating, from his pocket. The police were summoned and an officer, while frisking Sellers for possible concealed weapons, discovered unusual lumps in his clothing around the waistband of his trousers. He investigated further and discovered a number of other apparently new baby products concealed inside Seller's shirt.

II.

The First Issue: Ownership of the Goods
¶ 4. Sellers claims that the State's proof that the goods discovered on the person of the defendant were, in fact, the property of Jerry Lee's Grocery was insufficient as a matter of law. He cites a case dealing with the crime of larceny for the proposition that property alleged to have been stolen must be identified beyond a reasonable doubt by the most direct and positive evidence available. Griffin v. State, 279 So.2d 609, 611 (Miss.1973).
¶ 5. The only evidence regarding the identification of the goods allegedly stolen from Jerry Lee's Grocery was that offered by the security guard. The guard was not an employee of the business, but was an employee of a private security firm that provided security services to the grocery on a contract basis. The guard testified that he had examined all the items retrieved from Sellers's person, had confirmed that there were identical items on the shelves of the grocery, and that the pricing markers on the items were the same as those used by the grocery.
¶ 6. Sellers argues that, because this guard was not an employee of the store, his evidence was not the best evidence available on the identity of the goods. He suggests that the State was required to produce an employee of the grocery who could offer a more reliable identification of the goods as having actually belonged to Jerry Lee's Grocery.
¶ 7. We do not find merit in this argument. The mere fact that this guard was furnished to the store by an independent contracting security firm does not make his testimony on this subject less reliable or trustworthy than if he had been an employee of the grocery performing essentially identical tasks. Having worked inside the store, the guard certainly had the opportunity to observe and become familiar with the products offered for sale in the store and the nature of the pricing markings used for the products. Even had the guard not had such advance knowledge, there was evidence that, after the attempted theft was discovered, he compared each item retrieved from Sellers's person, all of which appeared to be new items, and identified them as being identical in all respects to other items remaining on the shelves of the business.
¶ 8. We are satisfied that this guard, based on his professional relation with the grocery business and based on the comparison work he testified to having performed on the goods in question, was a competent witness to identify the goods as belonging to the store.

III.

The Second Issue: Shifting the Burden of Proof
¶ 9. The State asked for and obtained an instruction that mirrored the language of Section 97-23-93(2) of the Mississippi Code regarding the matter of proving intent. Miss.Code Ann. § 97-23-93(2) (Rev. 1994). The instruction told the jury the following:
The Court instructs the jury that the requisite intention to convert merchandise without paying the merchant's stated price for the merchandise is presumed, and shall be prima facie evidence *353 thereof, when such person, alone or in concert with another person, wilfully conceals the unpurchased merchandise.
¶ 10. Sellers, relying on the United States Supreme Court case of Sandstrom v. Montana, urges that this instruction impermissibly shifted the burden of proof to him to prove that he did not have the criminal intent to convert the merchandise to his own use without paying for it. Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). In Sandstrom, the Supreme Court held that an instruction that the law presumes that a person intends the ordinary consequences of his voluntary acts violated the defendant's due process rights because the jury could view it as either a burden shifting presumption or a conclusive presumption of intent. Id. at 524, 99 S.Ct. 2450.
¶ 11. We decline to consider whether the above-quoted instruction raises the same prohibited presumptions discussed in Sandstrom because we find the issue to be procedurally barred. A criminal defendant, dissatisfied with proposed instructions, must voice that objection to the trial court at the proper time in order to preserve the issue for appellate review. Colburn v. State, 431 So.2d 1111, 1114 (Miss. 1983). The specific ground for the objection must be stated at that time and all objections not set out at the time are deemed to have been waived. Morgan v. State, 741 So.2d 246 (¶ 15) (Miss.1999). The purpose of the rule is obvious. It permits the trial court to deal with a potentially faulty instruction before it is given to the jury and, thus, avoid error and the attendant difficult process of retrying the case at a later date.
¶ 12. In this case, the only reason offered against the instruction by the defense was, "I don't know, without some definition of prima facie, that the jury is going to be able to make any sense out of that." That objection, in the view of this Court, did not serve to raise the issue of an unconstitutional shifting of the burden of proof to the defendant now advanced in the appellant's brief.

IV.

The Third Issue: Improper Sentencing as a Felon
¶ 13. Sellers argues that the trial court erred in sentencing him under the more severe penalties for shoplifting, third offense, because the jury was not permitted to pass on the question of fact as to whether Sellers actually had two prior shoplifting convictions. See Miss.Code Ann. § 97-23-93 (Rev.1994). He cites the case of Weaver v. State, which affirmed the proposition that, in the analogous situation of third-offense driving while intoxicated, the two prior convictions are elements of the crime itself to be decided by the jury rather than the proper subject for postverdict inquiry by the trial court as a part of the sentencing process. Weaver v. State, 713 So.2d 860, 865 (Miss.1997).
¶ 14. Weaver was decided after Sellers was tried. Prior to commencement of his trial, Sellers filed a motion in limine to prohibit the State from making any reference to his prior convictions because of the harmful prejudicial nature of such information. In that motion, Sellers advanced the argument that the proper means of dealing with this aspect of the case was a post-verdict inquiry in the nature of that prescribed by Uniform County and Circuit Court Rule 11.03, which sets up a bifurcated procedure for handling "cases involving enhanced punishment for subsequent offenses under state statutes." URCCC 11.03. Though the trial court made no formal ruling on Seller's motion in limine, there is no indication that the State objected to the procedure, and it is apparent from reviewing the record that the court, in fact, granted the desired relief.
¶ 15. Now, armed with the Weaver decision, Sellers argues that the trial court committed reversible error by granting Sellers's own motion to bifurcate the proceeding. We decline to permit Sellers *354 to gain advantage from an error that he caused. Insofar as Weaver can be read as requiring that the jury pass on the validity of alleged prior convictions as being an essential element of the charged crime, we think that it should be given prospective effect only. Weaver, 713 So.2d at 864. It appears from our review of case law that, prior to Weaver, it was an acceptable practice, whether such practice was or was not mandatory, to permit a bifurcated procedure on the issue of the existence of prior convictions which affected the severity of the potential sentence. See, e.g., Ghoston v. State, 645 So.2d 936, 937 (Miss.1994). Thus, unless some previously-undetected error of constitutional proportions arose by virtue of this bifurcated procedure, we do not think that Sellers may be heard to complain of the procedure he demanded. We must, therefore, look to whether the procedure employed amounted to an impermissible denial of Seller's fundamental right guaranteed him under the Sixth Amendment to a trial by jury.
¶ 16. Even conceding for sake of argument that, despite Ghoston, the trial court erred in bifurcating the trial, the procedure was undertaken at the specific urging of the defendant and his motion in limine could be seen as a partial waiver of the right to trial by jury in which the underlying operative elements of the offense itself, i.e., the acts constituting the shoplifting incident at the grocery, were determined by the jury and the additional fact of the necessary prior convictions was determined by the court. This is certainly an unusual procedure and one which this Court does not condone. Nevertheless, we note that the constitutional right to trial by jury is one that may be waived by the defendant. Robinson v. State, 345 So.2d 1044, 1045 (Miss.1977). The procedure to divide fact-finding duties was urged by Sellers for the apparent purpose of gaining a tactical advantage at trial, which was to deny the jury knowledge of his prior convictions for similar offenses. Thus, even though we are satisfied that, as a general proposition, it is improper to parcel out the determination of the various elements of a crime, some to the jury and some to the court, we do not think that such an error, if provoked by the defendant himself, rises to the level of an unconstitutional denial of the right to trial by jury.
¶ 17. There is no allegation by Sellers that he was procedurally denied from having the fact of his prior convictions proven beyond a reasonable doubt, and it is apparent that he was given a hearing in which he was afforded the opportunity to challenge the existence of the previous convictions. His only real complaint in that regard, therefore, is that the trial court, rather than the jury, acted as fact-finder in that inquiry.
¶ 18. While we caution that this opinion should not be understood as condoning for the future a trial in which some elements of the offense are determined by the jury and some by the trial courteven when the defendant agrees to, or even insists on, the procedurethis Court is nevertheless convinced that the procedure followed in this instance, to the extent that it was flawed, did not deny Sellers any of the fundamental protections afforded him by the United States Constitution nor did it deny him a fundamentally fair trial. For that reason, we decline to afford him any relief on this issue.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY OF CONVICTION OF FELONY SHOPLIFTING AND SENTENCE AS A HABITUAL OFFENDER OF FOUR YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JACKSON COUNTY.
KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.