# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-00230-COA

**LARRELL DONTA ABRAM A/K/A LARRELL ABRAM**                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                                              APPELLEE

DATE OF JUDGMENT:               01/22/2019
TRIAL JUDGE:                    HON. PRENTISS GREENE HARRELL
COURT FROM WHICH APPEALED:      MARION COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:         OFFICE OF STATE PUBLIC DEFENDER
                                BY: W. DANIEL HINCHCLIFF
ATTORNEY FOR APPELLEE:          OFFICE OF THE ATTORNEY GENERAL
                                BY: KAYLYN HAVRILLA McCLINTON
DISTRICT ATTORNEY:              HALDON J. KITTRELL
NATURE OF THE CASE:             CRIMINAL - FELONY
DISPOSITION:                    AFFIRMED - 06/16/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

    EN BANC.

    LAWRENCE, J., FOR THE COURT:

¶1.    On January 9, 2019, a Marion County Circuit Court jury convicted Larrell Abram of possession of a firearm by a felon.  The court sentenced Abram as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev. 2015) to ten years in the custody of the Mississippi Department of Corrections, with five years to serve, and placed Abram on five years of post-release supervision.  Abram filed a motion for judgment notwithstanding the verdict or, in the alternative, a motion for a new trial, which the court denied.  Abram appeals, arguing that (1) the circuit court improperly commented on evidence; (2) the circuit

court abused its discretion in finding evidence of Abram's prior bad acts admissible; (3) the State committed prosecutorial misconduct; and (4) the cumulative errors in his trial require reversal. Finding no error, we affirm Abram's conviction and sentence.

**FACTS**

¶2. On the evening of October 7, 2016, Officer Johnny Barnes of the Columbia Police Department was dispatched to a Walmart in Columbia, Mississippi, in response to a domestic-disturbance call. The caller said a male and female were in an altercation and that the male had kicked the female. When Officer Barnes arrived, the male and female were leaving the scene in a silver vehicle. Officer Barnes followed the silver vehicle and initiated a stop. The vehicle did not immediately stop but eventually parked outside a hotel parking lot. Once Officer Barnes saw the driver of the vehicle "making vertical movements in the vehicle," he radioed dispatch.

¶3. Officer Barnes got out of his vehicle, approached the silver vehicle, and asked the driver to step out of the vehicle. He recognized Abram from previous occasions. Officer Barnes testified that Abram was sweating, out of breath, and looked like he had physically exerted himself. He detained Abram with handcuffs. When the other officers arrived, Officer Barnes went to the other side of the car to make contact with the passenger, Sasha Ishman, whom he also recognized. He asked Ishman what happened, and she said that she and Abram had been "messing around playing." Officer Barnes noticed Ishman was also sweating and seemed like she had physically exerted herself. She had mud on her legs and

2

knees, and her clothing was torn. Officer Barnes went to speak to Abram again and when he returned to the vehicle, he saw Ishman reach into the back floorboard of the vehicle. He ordered her out of the vehicle, and she complied. Officer Barnes again asked her what happened, and she said she and Abram had gotten into an argument that became physical. Abram was arrested and the vehicle was impounded. While performing an inventory of the vehicle, Officer Barnes found a Smith and Wesson .38 caliber special revolver wrapped in a jacket. The gun was located on the back floorboard right behind the front seat. Officer Barnes asked Ishman about the gun. She said that Abram had the gun, and he tried to give it to her while they slowed to a stop, but she would not take it. When Officer Barnes walked by Abram with the gun, Abram said that Ishman had a gun in her purse "and that she's a felon too." At that point, Officer Barnes charged both Abram and Ishman "since nobody would own up to the gun."

¶4.     Abram and Ishman were both indicted for possession of a weapon by a convicted felon, and they were incarcerated at the same facility pending their trials. While Ishman was incarcerated, the State offered to dismiss her charge if she testified against Abram. At Abram's trial, the State called Ishman as a witness.

¶5.     At Abram's trial, Ishman stated that she chose to testify in exchange for dismissal of the charge against her. She testified that on the night in question, Abram hit her in the vehicle, and they began fighting. She got out of the vehicle and Abram chased her around the car until he grabbed her and forced her into the vehicle. Ishman testified that during the

3

fight, her clothes were ripped, and she had some scratches. Ishman further stated that when Officer Barnes pulled behind the vehicle, Abram threw a gun in her lap, which she threw back into his lap. She did not know "where the gun c[a]me from." They continued tossing the gun back and forth, and Abram told her to say the gun was hers because he did not want to go back to prison. At this time, they were "coasting" in the vehicle. When they stopped, Ishman suggested they "toss" the gun. She also told Abram that she would not say the gun was hers. Accordingly to Ishman, Abram threatened her. Then, he got the gun, wrapped it up in his jacket, and put it behind him under the back seat.

## ANALYSIS

### 1. The circuit court did not improperly comment on evidence.

¶6. Abram contends that the circuit court improperly commented on the weight of the evidence when it stated that State's Exhibit 3 had "the potential to have very much value for the fact finders." Abram further argues that the court's comments require reversal.

¶7. Earlier in the trial, Ishman testified that she and Abram e-mailed each other through the facility's "jail mail system" while they were incarcerated. Ishman stated that in one of their emails, Abram threatened her not to testify against him. At that point, the State's Exhibit 3, an email copy of Ishman and Abram's "jail mail" messages, was marked for identification purposes only. On direct examination, Abram stated that he "never threatened" Ishman. On cross-examination, the State requested that Exhibit 3 be allowed into evidence. The defense objected, arguing there was "no chain qualification." The following exchange

4

occurred:

> THE COURT: It could have its potential to have—it has the potential to have a lot of value for the exhibit for the jury to carry into deliberation. Because of that reason and he's made some statements directly impacting those . . . I think it would have some very much value for—or it has the potential to have very much value for the fact finders, therefore, I'm going to allow it. It will be Exhibit Number—
>
> THE DEFENSE: Your Honor, I'm going to enter a continuing objection based on the same thing. We don't know who printed that, what kind of equipment is involved in this—
>
> THE COURT: I think that foundation was laid—I know it was—when it was established for I.D. . . . I will admit it, but you can have your continuing objection.

¶8. Although defense counsel objected to the admission of the document, it did not object to the circuit court's comments. Consequently, this issue is procedurally barred on appeal. *See McDowell v. State*, 984 So. 2d 1003, 1023 (¶82) (Miss. Ct. App. 2007) (holding that failure to object to a judge's allegedly improper comments at trial waives the issue for appeal). Nonetheless, our review of the judge's comments shows that no error occurred. The judge merely stated that the evidence "could" and "has the potential" to be of value. "Trial judges may explain their rulings on evidentiary objections so long as they do not comment upon the evidence in a prejudicial manner." *Burnett v. State*, 231 So. 3d 1001, 1008 (¶18) (Miss. Ct. App. 2017) (citing *Wells v. State*, 698 So. 2d 497, 510 (Miss. 1997)). Further, the circuit court provided the jury with the following instruction:

> It is the duty of the judge to be completely fair to both sides in this trial, and

if any instruction, ruling, or statement, by the Court seems to indicate to you that the Court has any opinion about the case or any particular fact, such indication would be completely false, and you must disregard it.

The instruction was read to the jury and given to the jury in written form to have while they conducted their deliberations. "As an appellate court, we must assume that juries follow the instructions of the trial court." *Cobb v. State*, 734 So. 2d 180, 181 (¶4) (Miss. Ct. App. 1999). For the foregoing reasons, we find no merit to Abram's argument.

2. **The circuit court did not abuse its discretion in finding evidence of Abram's prior bad acts admissible.**

¶9. Abram also claims that the circuit court erred in allowing his prior bad acts into evidence, namely his arrest for lying to a police officer about his identity pursuant to Mississippi Code Section 97-9-79 (Rev. 2014). While Abram was *charged* for lying to a police officer about his identity he was never *convicted* of that charge.

¶10. On direct examination, defense counsel asked Abram, "[D]o you have anything to hide here?" to which Abram replied, "No, sir." Then, counsel asked him, "Are you lying to the [c]ourt and this jury?" Abram responded, "No, sir." Then, counsel asked Abram, "Have you ever been **charged** with lying?" and Abram answered, "No, sir." (Emphasis added).

¶11. On cross-examination, the State asked Abram, "You testified with [defense counsel's] testimony that you've never been **charged** for lying. That's not true, is it?" (Emphasis added). Abram explained, "Not that I can recall I ain't never been—I ain't never been found guilty of nothing like that with no lying. As far as me going to court and going in front of the judge, being found guilty and all that, it ain't never happened." The defense objected,

6

arguing that the charge was inadmissable for purposes of impeachment under Mississippi Rule of Evidence Rule 404(b)(1) since it did not result in a conviction. The State argued that the defense opened the door when it asked Abram if he had ever been charged with lying. The court ultimately allowed the information into evidence for "impeachment purposes only" because the court had previously allowed the defense to impeach Ishman based on a prior conviction of lying to a police officer pursuant to section 97-9-79.

¶12. "A trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Unless the judge abuses his discretion so as to be prejudicial to the accused, the Court will not reverse this ruling." *Gore v. State*, 37 So. 3d 1178, 1183 (¶13) (Miss. 2010) (quoting *Price v. State*, 898 So. 2d 641, 653 (¶29) (Miss. 2005)).

¶13. Under Mississippi Rule of Evidence Rule 404(b)(1) "[e]vidence of prior offenses committed by a defendant, not resulting in conviction, is generally inadmissible either for impeachment purposes or as part of State's case in chief." *Underwood v. State*, 708 So. 2d 18, 32 (¶41) (Miss. 1998). "However, once a defendant takes the stand in order to profess his good character, he or she opens the door, and the prosecution is allowed to respond to the defendant's assertions of good character by impeaching him or her." *Council v. State*, 976 So. 2d 889, 903 (¶31) (Miss. Ct. App. 2007) (citing *Morgan v. State*, 741 So. 2d 246, 254 (¶22) (Miss. 1999)). "When the accused raises the issue of his character, the prosecution may then offer evidence of the accused's bad character." *Id*. "A defendant's character is put in issue when he states that he has a good character or a good record, or when he otherwise

7

offers evidence of good character." *Id*. (citing *Rowe v. State*, 562 So. 2d 121, 123 (Miss. 1990)) (other citation omitted).

¶14.    Here, Abram put his character in issue when he testified he had nothing to hide, was not lying to the jury, and had never been charged with lying, which was, in fact, a lie.  As a result, Abram opened the door for the State to impeach him by offering evidence of his prior charge, which he denied under oath.  Thus, we find the circuit court did not abuse its discretion in allowing Abram's charge into evidence.

### 3.    The prosecutor's comments did not amount to misconduct.

¶15.    Abram argues that the State committed prosecutorial misconduct throughout opening and closing arguments.  Specifically, he claims that the State engaged in witness vouching, stated that Abram needed to "accept responsibility" for his actions, and encouraged the jury to "send a message" by finding Abram guilty.  The relevant portions of the State's opening and closing statements and the portions claimed error by the defense are listed below:

> We aren't going to try Ms. Ishman for the charge today.  **We believe that Ms. Ishman is telling the truth when she said she didn't know that the gun was in the car**. . . . We believe what Ms. Ishman has told her attorney, told us, is true.
>
> . . . .
>
> The only version that's been accurate and consistent is Sasha Ishman's.  **I submit she's telling you the truth** . . . .
>
> . . . .
>
> When I think about this case, the first thing that comes to my mind is responsibility.  **Larrell Abram needs to accept responsibility for the fact**

8

**that he is a prior convicted felon and he had a firearm in his possession.** Responsibility. I read this quote a couple of days ago and I feel like it kind of fits this case in this situation. And it was that sometimes the hardest situation to face in life is the one of our own making, the one that we put ourselves in. And that's what's happened here. Larrell Abram put himself in this situation. He put himself with a firearm. He knew about the gun. He knew he had it. He's trying to get Sasha to take the blame for it. He needs to step up and be a man, handle his business and accept the responsibility of his own making. Responsibility.

. . . .

We think we've proven the case. We think we've proven beyond a reasonable doubt. We don't think there's a doubt in this case that Larrell Abram had possession of that .38, that gun that's in the box here. We think that you have the evidence to vote guilty in this case. And we think you should vote guilty in this case because a felon should not have possession of firearms, because it's against the law. And you're the jury and you've set the law for our county. **And if you don't follow the law, how can we have a society. I think you should do what's right and you should vote guilty in this case.**

(Emphasis added).

¶16. "The standard of review that appellate courts must apply to lawyer misconduct during opening statements or closing arguments is whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created." *Jackson v. State*, 174 So. 3d 232, 236 (¶9) (Miss. 2015). "Even when a prosecutor has made an impermissible comment, this Court requires a showing of prejudice to warrant reversal." *Outerbridge v. State*, 947 So. 2d 279, 286 (¶23) (Miss. 2006). A prosecutor's statement may be reviewed only "if the prosecutor's statement was so inflammatory that the trial judge should have objected on his own motion." *O'Connor v. State*, 120 So. 3d 390, 399 (¶23) (Miss. 2013).

9

¶17.    At the outset, we recognize that Abram's failure to object at the trial level renders this issue procedurally barred on appeal. *See McGrath v. State*, 271 So. 3d 437, 444 (¶26) (Miss. 2019).  Procedural bar notwithstanding, Abram's claim is without merit.

¶18.    "Attorneys are allowed a wide latitude in arguing their cases to the jury." *Sheppard v. State*, 777 So. 2d 659, 661 (¶7) (Miss. 2000).  Further, the Mississippi Supreme Court has stated:

> The court cannot control the substance and phraseology of counsel's argument; there is nothing to authorize the court to interfere unless there is either abuse, unjustified denunciation, or a statement of fact not shown in evidence.  To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial.

*Grayson v. State*, 118 So. 3d 118, 139 (¶60) (Miss. 2013) (internal quotation marks omitted) (quoting *Manning v. State*, 735  So. 2d 323, 345 (¶50) (Miss. 1999)).

¶19.    The arguments concerning Ishman's testimony being "accurate and consistent," holding Abram "responsible" under the law, and why the jury should vote guilty in the case based on the evidence, are valid and legitimate arguments made by a prosecutor.  Those remarks were not outside the bounds of oral advocacy.  Essentially, those arguments were arguing to the jury that Abram should be held accountable for violating the law.

¶20.    The final error alleged by Abram concerns a statement made by the prosecutor in the opening statement.  The prosecution stated, "We believe that Ms. Ishman is telling the truth when she said she didn't know that the gun was in the car."  Mississippi Rule of Professional Conduct 3.4 clearly states lawyers shall not "assert personal knowledge of facts in issue

except when testifying as a witness, or state a personal opinion as to the justness of a cause, the **credibility of a witness**, the culpability of a civil litigant or the **guilt or innocence of an accused** . . . ." (Emphasis added). It is not a difficult proposition to understand that the Rule requires prosecutors to argue the evidence and not their personal opinions. A lawyer can explain to the jury why one piece of evidence should carry more weight or be deemed credible by the jury but not offer that the lawyer personally believes it to be so. A lawyer can appeal to the duty of the jury to determine the credibility of the witnesses and offer evidence on that issue. But a lawyer cannot assume the role of the jury and exchange his opinions as to guilt or innocence as currency in the deliberative process of the jury.

¶21. In this case, the prosecutor argued that the jury should accept his personal opinion and determination of whom to believe instead of arguing why the evidence supported the credibility of a particular witness. Let there be no doubt, such an argument runs counter to fair play, fundamental fairness, and contrary to the dictates of Rule 3.4. However, in this case, the defense never objected to the argument and raised the issue for the first time on appeal. Further, we cannot say that any of the prosecutor's actions in this case "create[d] unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created." *See Jackson*, 174 So. 3d at 236 (¶9). Therefore, we affirm on this issue.

####     4.     There is no cumulative error.

¶22. Finally, Abram argues that the cumulative-error doctrine demands this Court reverse. "Under the cumulative-error doctrine, individual errors may combine with other errors to

make up reversible error, where the cumulative effect of all errors deprives the defendant of a fundamentally fair trial." *Ross v. State*, 954 So. 2d 968, 1018 (¶138) (Miss. 2007). "However, where there is no error in part, there can be no reversible error to the whole." *Harris v. State*, 970 So. 2d 151, 157 (¶24) (Miss. 2007). Because we find that Abram's other issues on appeal are without merit, there can be no cumulative error. This issue is without merit.

## CONCLUSION

¶23. In conclusion, we find that the circuit court did not improperly comment on evidence. Further, we find that the circuit court did not abuse its discretion in allowing evidence of Abram's prior bad acts because the defense opened the door during direct examination of Abram. We also find that the defendant did not lodge an objection to the alleged prosecutorial misconduct and failed to show any prejudice resulted from any comments made by the prosecutor, and therefore the issue is without merit. Likewise, because there is no cumulative error, we affirm Abram's conviction and sentence.

¶24. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, McCARTY AND C. WILSON, JJ., CONCUR. McDONALD, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**