MAXWELL, J.,
for the Court:
¶ 1. Charles Moore was convicted of aggravated assault and conspiracy to commit aggravated assault. Moore challenges the trial judge’s denial of his motions for a mistrial after two of the State’s witnesses mentioned his prior imprisonment. Neither of the witnesses’ brief responses about his incarceration were prompted by the State, and we find no abuse of discretion in denying a mistrial. We also find no merit to Moore’s additional challenges to the weight and sufficiency of the evidence. We affirm.
BACKGROUND FACTS
¶ 2. On the evening of May 22, 2009, Moore and his three teenaged nephews stopped at a convenience store in West, Mississippi, where Moore bought them quarts of beer. After they finished then-beers, Moore mentioned to- his nephews that he “needed to take care of some business in Lexington.” Moore then drove the group to a rural area in Holmes County, where he stopped his car on a dead-end *392 road near the trailer where his ex-girlfriend, Jennifer Hampton, was staying. Moore popped the trunk and told the boys to “get their guns.” One nephew grabbed a .22-caliber rifle and another a shotgun. Two of the nephews opened fire on a car parked in front of Jennifer’s trailer. Moore, who had snuck behind the trailer, aimed through the bedroom window and shot Jennifer’s then-current boyfriend, Derrell Blair, who was sleeping. Moore’s bullet struck Blair in the head, severely injuring him. Two of the nephews pleaded guilty to conspiracy to commit aggravated assault, but Moore proceeded to trial.
¶ 3. The jury found Moore guilty of aggravated assault and conspiracy to commit aggravated assault. After his motion for a judgment notwithstanding the verdict or new trial was denied, Moore timely appealed.
DISCUSSION
I. Evidence of Prior Criminal History
A. Witnesses’ Testimony
¶ 4. Jennifer and her father, Matthew Hampton, testified during the State’s casein-chief. Both made unsolicited comments about Moore’s having gone to the penitentiary for an unrelated crime. Jennifer and Moore had been in a long-term relationship, having five children together. And both Jennifer’s and Matthew’s unprompted comments were made in the context of explaining why Jennifer’s relationship with Moore had deteriorated.
¶ 5. Jennifer testified on direct examination about her break-up with Moore and her subsequent relationship with Blair. Jennifer explained she and Moore “tried to get back, but he went to jail for like 18 months.” Moore’s counsel objected, and the trial judge instructed the jury to disregard the testimony because “it has nothing to do with this case.” The trial judge denied Moore’s motion for a mistrial.
¶ 6. Matthew, who lived nearby Jennifer, claimed he had heard the gunshots. He immediately thought Moore had shot Jennifer or Blair. When pressed during cross-examination about why he suspected Moore had shot one of them, he explained his suspicions were based on a previous phone conversation he had overheard between Jennifer and Moore. Matthew testified that he confronted Moore about the phone conversation. And Moore purportedly told Matthew: “It ain’t like you heard. I didn’t tell Jennifer I was going to do nothing to her. I just love her, and I want to raise my kids.” Matthew claimed he responded by asking Moore: “Well, how ... can you raise your kids or want to come back home and raise your kids, [when] you jumped up and married [another woman], and now all a sudden when you done went to the penitentiary ... you want to come out and be a father.”
¶ 7. Moore’s attorney requested a bench conference and complained Matthew’s answer was unresponsive. The trial judge noted that “[Matthew] answered the question. He went on to say why that was his first thought. And if it had something to do with the penitentiary, that was why.” The trial judge suggested Moore’s attorney should perhaps not “ask him any open-ended questions.” Moore’s attorney moved for a mistrial, which was denied. No limiting instruction was requested or given regarding Matthew’s testimony.
B. Denial of a Mistrial
¶ 8. Moore claims both mentions of his incarceration violated Mississippi Rule of Evidence 404(b) and required a mistrial. Under Rule 404(b), “[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.” “The reason for the rule is to *393 prevent the State from raising the inference that the accused has committed other crimes and is therefore likely to be guilty of the offense charged.” White v. State, 842 So.2d 565, 573 (¶ 24) (Miss.2003) (citations omitted).
¶ 9. The denial of a motion for a mistrial is reviewed for abuse of discretion. Pittman v. State, 928 So.2d 244, 249 (¶ 1) (Miss.Ct.App.2006) (citing Bass v. State, 597 So.2d 182, 191 (Miss.1992)). And we are mindful that trial judges are better situated than their appellate counterparts to decide whether a trial should be discontinued. Id. (citing Schwarzauer v. State, 339 So.2d 980, 982 (Miss.1976)).
¶ 10. Moore is correct that a government witness’s statement about a defendant’s criminal record is generally improper and inadmissible. Forbes v. State, 771 So.2d 942, 952 (¶ 33) (Miss.Ct.App.2000) (citing Reynolds v. State, 585 So.2d 753, 754-55 (Miss.1991)). But we note Jennifer’s brief comment about Moore’s imprisonment was not prompted by the State and was immediately addressed by the trial judge’s limiting instruction that Moore’s time in prison “has nothing to do with this case.” The Mississippi Supreme Court has held “[wjhere no serious and irreparable damage was engendered by an improper remark, a curative instruction is deemed sufficient to remove the taint from the minds of the jurors.” Clark v. State, 40 So.3d 531, 539 (¶ 16) (Miss.2010) (internal citations and quotations omitted). “Absent unusual circumstances, where [an] objection is sustained to improper questioning or testimony, and the jury is admonished to disregard the question or testimony, we will not find error.” Hill v. State, 4 So.3d 1063, 1065-66 (¶16) (Miss.Ct.App.2009) (quoting Wright v. State, 540 So.2d 1, 4 (Miss.1989)). We find the judge’s curative instruction was sufficient to remedy any improper reference to Moore’s criminal past and prevent any undue prejudice.
¶ 11. As to Matthew’s testimony, the record shows there was no additional limiting instruction to the jury. But that does not mean his comment about Moore’s incarceration mandates reversal. “Where the -witness refers briefly to another crime, and the testimony was not purposely elicited by the district attorney to prove the defendant’s character, no reversible error occurs.” Hobson v. State, 730 So.2d 20, 24 (¶ 10) (Miss.1998). The State did not elicit Matthew’s statements about Moore being in the penitentiary to prove Moore’s bad character. Instead, it was Moore’s attorney who asked Matthew why his first thought upon hearing gunshots was that Moore had shot Jennifer’s boyfriend. Further, in briefly mentioning the penitentiary, Matthew did not say what crime Moore had committed. Cf. Hancock v. State, 964 So.2d 1167, 1179 (¶¶ 26-27) (Miss.Ct.App.2007) (holding no reversible error occurred in the admission of testimony that the defendant told the witness “he’s got experience with the bank robberies from his prior record” because this statement was “ambiguous at best in the eyes of most jurors”).
¶ 12. Given that the jury had previously been instructed Moore’s prior incarceration had nothing to do with the present case, we find no abuse in discretion in denying Moore’s second motion for a mistrial.
II. Sufficiency and Weight of the Evidence
¶ 13. Moore argues he was entitled to a directed verdict because the State presented insufficient evidence to support his aggravated-assault and related conspiracy conviction. Alternatively, he requests a *394 new trial, claiming the jury’s verdict was contrary to the overwhelming weight of the evidence.
A. Sufficiency of the Evidence
¶ 14. “[I]n considering whether the evidence is sufficient to sustain a conviction,” we ask “whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).
¶ 15. To establish an aggravated assault, the State was required to prove Moore “knowingly cause[d] bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm[.]” Miss.Code Ann. § 97-3-7(2)(b) (Supp.2011). The conspiracy count required the State “to show that two or more persons agreed to commit [the] crime” of aggravated assault. Berry v. State, 996 So.2d 782, 787 (¶ 12) (Miss.2008) (quoting Morgan v. State, 741 So.2d 246, 255 (¶ 26) (Miss.1999)). The agreement need not be expressed or formal. Morgan, 741 So.2d at 255 (¶ 27). Rather, “[a] conspiracy can be proven by the acts and conduct of the alleged conspirators and can be inferred from the circumstances.” Id. (citations omitted).
¶ 16. Moore only generally asserts the evidence did not support his convictions. Neither in his motion for directed verdict nor in his appeal has he specified what essential elements the State failed to prove. After reviewing the record, we find the two convictions are sufficiently supported by the evidence.
¶ 17. Jennifer testified, the night Blair was shot, she was awake in the living room of her trailer. She heard multiple gunshots outside, then one loud shot, followed by Blair moaning. She ran into the bedroom and found Blair bleeding from his head. The trial court admitted photographs showing the severity of Blair’s injuries. Jennifer also testified Moore had threatened to kill her and Blair during a confrontation a month earlier. In another incident, Moore followed them in his car as they drove away from a relative’s house.
¶ 18. Matthew testified he heard multiple gunshots coming from Jennifer’s front yard, and when he stepped outside, he saw Moore running away. Matthew chased Moore, but Moore continued fleeing and evaded him. One of Moore’s nephews, Eris Lee, testified Moore later told him he “shot that dude.” Viewing this evidence in a light most favorable to the State, we find it sufficient to sustain Moore’s aggravated-assault conviction.
¶ 19. As to the conspiracy count, Moore’s three teenaged nephews—Eris, David Moore, and Sammy Moore—all testified that they agreed to go to Lexington so Moore could “take care of some business.” When they got to Jennifer’s residence, Moore opened his trunk, and two of the nephews “got their guns.” They walked to the front of the trailer, where two of the nephews fired multiple shots with a rifle and shotgun at a parked car, while Moore snuck behind the trailer and allegedly shot Blair through the bedroom window. When the shooting ceased, Moore was spotted by Jennifer’s father, but Moore jumped a ditch and was able to elude him. Moore met his nephews back at his car, and the group drove to Kosciusko. Moore instructed his nephews, if asked, to say they were in Kosciusko that night.
¶ 20. Viewing this evidence in the light most favorable to the State, we find the jury could have reasonably inferred an *395 agreement existed between Moore and his nephews to help Moore carry out the assault.
B. Weight of the Evidence
¶ 21. Our standard of review differs slightly when reviewing a claim based on the weight of the evidence challenging a trial court’s denial of a motion for a new trial. “[T]he power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.” Bush, 895 So.2d at 844 (¶ 18) (quoting Amiker v. Drugs For Less, Inc., 796 So.2d 942, 947 (¶ 18) (Miss.2000)). When considering an objection to the weight of the evidence, we view the evidence in the light most favorable to the verdict and “will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Id. (citation omitted).
¶ 22. As with his claim he should have been granted a directed verdict, Moore does not specify any contradictory evidence that shows his guilty verdict is unconscionably unjust. And we find this is not a case where “the evidence preponderates heavily against the verdict.” Bush, 895 So.2d at 844 (¶ 18). Viewing the evidence in the light most favorable to the verdict, we do not find the evidence is contrary to the verdict or that the verdict is unconscionably unjust.
¶ 23. THE JUDGMENT OF THE HOLMES COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, AGGRAVATED ASSAULT, AND SENTENCE OF TWENTY YEARS, WITH FIVE YEARS SUSPENDED AND PLACED ON SUPERVISED PROBATION AFTER RELEASE FROM INCARCERATION; AND COUNT II, CONSPIRACY TO COMMIT AGGRAVATED ASSAULT, AND SENTENCE OF FIVE YEARS, WITH THE SENTENCES TO RUN CONSECUTIVELY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HOLMES COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, RUSSELL AND FAIR, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.