# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-KA-00747-COA

**GLORIA BREWER WELLS A/K/A GLORIA WELLS**       **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**       **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/20/2021 |
| TRIAL JUDGE: | HON. STANLEY ALEX SOREY |
| COURT FROM WHICH APPEALED: | SIMPSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALEXANDRA LEBRON |
| DISTRICT ATTORNEY: | CHRISTOPHER DOUGLAS HENNIS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/24/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., McDONALD AND McCARTY, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1. A defendant was convicted for the sale of methamphetamine. On appeal, she argues that a confidential informant improperly commented about past drug sales and that she was deprived of a jury instruction stating this informant's testimony should be weighed "with great care and suspicion." Finding no error, we affirm.

## BACKGROUND

¶2. Hoping to curtail drug activity, the Magee Police Department recruited a confidential informant to purchase controlled substances in the community. The CIs were generally recruited from people who had been arrested for possession of drugs. If they successfully

purchased drugs from a seller, the department would not pursue their possession charges.

¶3.    Kimberly Blunt had been arrested for the possession of methamphetamine. She then acted as a CI for the department. The goal was to purchase methamphetamine from Gloria Wells. Blunt met with the police and was fitted out with audio and video equipment so the buy could be recorded. She had video recording gear hidden in three locations: a pair of sunglasses, a Starbucks coffee cup, and a shirt button; there was also a body wire hidden in her handbag that was not for recording but so law enforcement could ensure she was safe.

¶4.    Blunt was given $40 from city funds to make the buy. She then drove to Wells' home and purchased what was later determined to be methamphetamine. Wells was arrested and indicted for the sale of less than 2 grams of methamphetamine.

¶5.    At trial, the defense focused heavily on whether Blunt could be trusted. The jury heard Blunt had been converted into a CI because she had been arrested for the possession of methamphetamine, and that after she originally "worked off" the charge, she was arrested a second time for possession and became a CI again. Law enforcement admitted the CI's charges for possession had been completely dropped. An officer testified Blunt's "charges will be dropped irregardless of the outcome" of the trial. Defense counsel asked him if the informant had "basically gotten a get-out-of-jail-free card in the City of Magee," and the officer agreed.

¶6.    On the stand, Blunt admitted she had received a deal in order to testify. She did not receive cash to work as a CI but instead received money for gas and obtained a bond reduction in addition to having her felony charge dropped. She admitted to using drugs for

2

a month before the trial.

¶7.     During cross-examination of Blunt, defense counsel demanded that she acknowledge the unreliability of her testimony about how Wells let her in the house. "So that was a lie, right?" she was asked. In response, Blunt stated, "Well, I mean, that's not the only time I've bought from Ms. Wells." The trial court declined to grant a mistrial on the ground the defense had opened the door. Wells was ultimately found guilty and sentenced to sixteen years in custody.

## DISCUSSION

¶8.     Wells raises two issues on appeal. First, she argues she is entitled to a new trial due to testimony by the informant that she claims prejudiced her; second, she argues a jury instruction was improperly refused.

### I.     The CI's testimony does not warrant reversal.

¶9.     Wells argues that the CI prejudiced her during the trial by referring to other bad acts—specifically when she said, "[T]hat's not the only time I've bought from Ms. Wells." She argues this reference warrants reversal and a new trial.

¶10.    In general, Wells "is correct that a government witness's statement about a defendant's criminal record is generally improper and inadmissible." *Moore v. State*, 105 So. 3d 390, 393 (¶10) (Miss. Ct. App. 2012). This is because "Rule 404(b)(1) prohibits circuit courts from admitting evidence of a person's prior crimes, wrongs, or other acts as a means of proving 'that on a particular occasion the person acted in accordance with the character trait.'" *Lewis v. State*, 295 So. 3d 521, 537 (¶49) (Miss. Ct. App. 2019). "The

reason for the rule is to prevent the State from raising the inference that the accused has committed other crimes and is therefore likely to be guilty of the offense charged." *Id*.

¶11. But there are caveats to this general rule. For instance, "[w]here the witness refers briefly to another crime, and the testimony was not purposely elicited by the district attorney to prove the defendant's character, no reversible error occurs." *Moore*, 105 So. 3d at 393 (¶11) (internal quotations marks omitted). And in *Lewis*, we noted that the improper bad acts testimony had actually been elicited by "cross-examination by [the defendant's] own counsel." *Lewis*, 295 So. 3d at 537 (¶50). In such a situation, we held that when defense "counsel first 'opened the door' by addressing" the alleged prior bad acts, a defendant "cannot now complain of alleged errors he invited." *Id*.

¶12. Wells' counsel pressed the CI hard on her credibility during cross-examination. Regarding how the alleged purchase of meth went down, he asked her to admit she was misleading the jury: "So that was a lie, right?"

¶13. The CI revolted against the questioning: "Well, I mean, that's not the only time I've bought from Ms. Wells."

¶14. We find that the CI's statement was elicited by defense counsel on cross-examination and not purposefully elicited by the district attorney to prove the defendant's character. The response was only a brief remark, and there was no follow-up on what the comment meant. Nor did Wells request a limiting instruction after the trial court declined to grant a mistrial. As a result, Wells cannot now complain of an alleged error that was caused by her defense counsel's own questioning. "[I]t is well settled that a defendant cannot complain of evidence

4

which he himself brought out." *Stone v. State*, 210 Miss. 218, 225, 49 So. 2d 263, 266 (1950).

## II.    The informant instruction was not improperly refused.

¶15.    Wells next takes issue with the fact that her preferred instruction on weighing the CI's testimony was refused.

¶16.    "The standard of review with regard to a trial court's decision to grant or deny a jury instruction is abuse of discretion." *McCool v. State*, 328 So. 3d 173, 189 (¶76) (Miss. Ct. App. 2021). "In its analysis, an appellate court considers all given jury instructions to determine whether, when read as a whole, they 'fairly announce the law of the case and create no injustice[.]'" *Id*. (quoting *Rubenstein v. State*, 941 So. 2d 735, 784-85 (¶224) (Miss. 2006)). "If the instructions fairly state the law and do not prejudice the defendant, reversal is not warranted." *Id*. "In other words, 'if all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law, no error results.'" *Id*. (quoting *Rubenstein*, 941 So. 2d at 784-85 (¶224)).

¶17.    Wells wanted an instruction that told the jury how to assess Blunt's testimony. The trial court refused to give the instruction, which told the jury "that the law looks with suspicion and distrust on the testimony of an alleged accomplice or informant, and requires the jury to weigh that testimony with great care and suspicion." However, the jury did receive the trial court's general instructions that it was "the sole judge[] of the weight and worth of the testimony of each witness" and that it was the jury's "exclusive province to determine the facts in this case and to consider and weigh the evidence for that purpose."

5

¶18. Wells is correct that the cautionary instruction is proper in some circumstances. However, it is not an abuse of discretion when a trial court does not give the cautionary instruction if the details of the CI relationship are disclosed to the jury and the CI is subject to cross-examination. *Webber v. State*, 108 So. 3d 930, 931-32 (¶7) (Miss. 2013); *see also Corrothers v. State*, 148 So. 3d 278, 302-03 (¶55) (Miss. 2014) (finding it was not error to decline the instruction when "the details of the informant's paid arrangement were disclosed to the jury and the informant was subject to cross-examination").

¶19. In this case, on direct examination, the State elicited from the arresting officer that Blunt was a confidential informant for the Magee Police Department. The officer disclosed she was arrested for possession of methamphetamine. Afterward, she had worked twice for the authorities as a CI—the second time after she had again been arrested for possession of meth.

¶20. Then, on cross, the officer described the circumstances of her first arrest and that he had sworn out a felony affidavit against the CI. The officer further disclosed the terms of the agreement with Blunt—"[t]hat if she was able to purchase alleged illegal narcotics that I would not pursue her charges to the D.A.'s office." The officer noted it was not a written agreement, but oral.

¶21. The CI testified she was told that if she "help[ed] them get a few drug dealers off the street and they would help me with my fine, with my charges." The cross-examination focused heavily on what deal she had made with law enforcement and what the value was to her. Blunt said, "[I]f I would help him, they would help me with my charges." She also

6

agreed she was promised protection from future prosecution. She was not receiving cash payments, but she did receive money for gas and obtained a bond reduction.

¶22. As Wells admits in her brief, this case fits squarely within *Webber* and its progeny. The details of the CI's arrangement with law enforcement were disclosed to the jury in this case, and she was heavily cross-examined. As a result, it was not an abuse of discretion for the trial court to decline the cautionary instruction. *See Gale v. State*, 239 So. 3d 513, 516 (¶13) (Miss. Ct. App. 2017) (collecting cases finding the jury instruction was not warranted in this situation).

¶23. In *Gale*, we affirmed when the instruction was not given, but "[t]he details of the informant's pay arrangement and the surrounding circumstances were disclosed to the jury," and "[t]he informant was thoroughly cross-examined, and [the defendant] was permitted to argue that the jury should not find his testimony credible." *Id*. As in that case, here "[t]he jury was properly instructed that it was the arbiter of the credibility of witnesses," so "the issue of the informant's credibility was squarely put to the jury, and that was adequate under Mississippi law." *Id*.

¶24. Finding no error warranting reversal, Wells' conviction and sentence are **AFFIRMED**.

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR.**