# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-00179-COA

**JAMES C. RODGERS A/K/A JAMES RODGERS**           **APPELLANT**
**A/K/A JAMES CHRISTOPHER RODGERS**

**v.**

**STATE OF MISSISSIPPI**           **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/11/2021 |
| TRIAL JUDGE: | HON. STEVE S. RATCLIFF III |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| | MOLLIE MARIE McMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LAUREN GABRIELLE CANTRELL |
| DISTRICT ATTORNEY: | JOHN K. BRAMLETT JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART - 10/10/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., LAWRENCE AND SMITH, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1. In 2018, James Christopher Rodgers was convicted of one count of possession of methamphetamine with the intent to distribute and one count of conspiracy to sell methamphetamine. He was sentenced as a non-violent habitual offender to serve sixty years in custody for possession (Count I) and twenty years in custody for conspiracy (Count II) with the terms set to be served concurrently. He now appeals his conviction of Count II, asserting that the State presented insufficient evidence to convict him of conspiracy to sell

methamphetamine. Rodgers does not challenge his conviction and sentence as to Count I, possession with intent to distribute. Upon review, we find there was insufficient evidence as to Count II and therefore reverse and render only his conviction and sentence for conspiracy to sell methamphetamine. Rodgers's conviction and sentence for possession with intent are affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2. On August 3, 2017, Sheriff's Deputy Rylon Thompson was conducting a safety checkpoint on Highway 49 in Madison County. When Melissa Moncure and James Rodgers, along with Moncure's one-year-old child, came through the safety checkpoint, they were asked to pull over after Thompson smelled a "strong odor of burnt marijuana coming from the vehicle." Thompson instructed both Moncure and Rodgers to exit the vehicle. He patted Rodgers down and "felt what [he] believed to be a large sum of money in his left pants pocket." Upon removal, Thompson found what he described as "consistent with what's known as a dope roll[,]" which essentially is "a large sum of money consisting of much smaller bills" that is typically used in the purchase of drugs.

¶3. Thompson searched the vehicle after developing probable cause due to the odor coming from the vehicle. During the search, Thompson noticed an electronic scale "commonly used to measure controlled substances when being bought and purchased" in between the console and the passenger seat Rodgers was occupying. When Thompson opened the glove compartment, directly in front of Rodgers's seat, he found a large bag of what appeared to be crystal methamphetamine. Also "around the center console area" was

2

Moncure's purse, which contained a "small amount of marijuana." Rodgers and Moncure were immediately taken into custody; Moncure's child was placed into the custody of the Mississippi Department of Child Protection Services (CPS). Moncure was charged with possession of marijuana and driving under the influence. Rodgers and Moncure were both indicted for possession of ten but less than thirty grams of methamphetamine with the intent to distribute and conspiracy to sell more than ten but less than thirty grams of methamphetamine. The indictment specified that Rodgers was being charged as both a subsequent drug offender and a habitual offender.[1] Moncure accepted a plea offer and participated in a pretrial diversion program.

¶4. Rodgers's trial took place in the Madison County Circuit Court on June 13, 2018. The State called four witnesses, including Deputy Thompson, who recounted Rodgers's and Moncure's stop and subsequent arrest, and Jacqueline Gledhill, an expert in forensics who testified about her identification of the methamphetamine and its weighing approximately 21.82 grams.

¶5. The State then called Moncure to testify (part of her agreement with the State). Moncure testified that she had known Rodgers for "[a]bout eight or nine years" and had been in a "back and forth relationship" with him since August 2016. She had been living with him but left a couple of days before the date of their arrest. She testified that on August 3, 2017, she went to a Walmart in Hinds County with her child to "pick up some money" as Rodgers had instructed her two days prior. In order for her to do so, he sent her a screenshot via text

_____

[1] Miss. Code Ann. § 41-29-147 (Rev. 2013); Miss. Code Ann. § 99-19-81 (Rev. 2015).

3

message of a MoneyGram receipt. The screenshot contained no name from either the recipient or sender. Instead, it showed only basic transaction information—the transaction type and date of the initial amount being received, the transaction's reference number, and the time the money would be available for pick-up. This screenshot was admitted into evidence and published to the jury.

¶6. Continuing with her testimony, Moncure stated that the MoneyGram totaled $130 and that she then drove to meet Rodgers to give it to him. After she gave him the MoneyGram, Rodgers asked her for a ride, telling her "to drive and whenever [they] came to a certain point . . . he'd tell [her] to turn." Moncure stated that shortly after she began driving, she and Rodgers smoked marijuana. She consequently began swerving. Rodgers then removed drugs from his pocket, "threw them on the dash," and asked her if she was sure she could drive. She testified that this was the first time she was ever aware of the methamphetamine in her vehicle that night. She stopped at a gas station on Highway 49, and Rodgers switched spots with her in order to drive. Not long after this, they noticed police lights up ahead as part of a roadblock. They stopped again to switch drivers because Moncure was the only one with a valid license. Upon reaching the roadblock, Deputy Thompson asked her to pull over and then searched her vehicle, finding the bag of methamphetamine and, later, marijuana in her purse. She was subsequently arrested, and her child was placed into custody with CPS.

¶7. Moncure gave three statements to the police concerning the incident, two of which she would later refer to as her "fake statements." The first statement was given in August 2017, shortly after the incident, and explained that Moncure was unaware of the methamphetamine

4

in her car until Rodgers "tossed a bag of meth on the dash" of her car. In her second statement, made in February 2018, she took full responsibility for the methamphetamine. She testified that Rodgers was with her when she gave this statement and "from the beginning after [they] got arrested[, Rodgers] tried to convince [her] that [she] would receive . . . a lesser punishment than what he would." She also stated that Rodgers was abusive toward her. Following the first two statements, Moncure returned to the sheriff's department in April 2018 to make a third statement explaining why she gave the first two statements. She did so, in her words, because she "didn't feel like it was fair that [she] was about to get in this much trouble for something that wasn't [hers] and [Rodgers] was going to be walking the streets." Moncure's third statement was not introduced into evidence due to her mentioning several past offenses.

¶8.    The State also called Investigator Trey Curtis with the Madison County Sheriff's Department whose job entailed monitoring phone calls made by inmates. He stated that on August 11, 2017, Rodgers made a phone call to Moncure. In the call, Rodgers told Moncure, "[T]hat . . . could have been in your purse and everything would have been good. [T]hey didn't even search your purse." He further stated, "I was hoping you would take the charge[.]" Moncure responded, "[S]ee we didn't have time to talk about any . . . I didn't know anything that was going on." A recording of the phone call was played for the jury.

¶9.    The jury convicted Rodgers of possession with intent to distribute methamphetamine and conspiracy. He was sentenced as a non-violent habitual offender to sixty years for possession with intent to distribute and twenty years for conspiracy. The sentences were

ordered to be served concurrently. In his first motion for post-conviction collateral relief (PCR), Rodgers alleged that his trial counsel did not timely appeal his conviction. The circuit court dismissed that PCR motion on the ground that it was untimely, and Rodgers appealed that decision. This Court reversed the order and remanded the case for the circuit court to assess Rodgers's PCR claims. *Rodgers v. State*, 327 So. 3d 675, 677-78 (¶¶7-8) (Miss. Ct. App. 2021). Following remand, the circuit court held a hearing in February 2022,[2] and granted Rodgers's request to file an out-of-time direct appeal, which is presently before us.

## ANALYSIS

¶10. Rodgers raises one issue on appeal. Rodgers is not appealing his conviction for possession of methamphetamine. The only issue he raises on appeal is whether the evidence was insufficient to convict him of conspiracy. This Court applies a de novo standard of review to challenges to the sufficiency of the evidence. *Tubwell v. State*, 359 So. 3d 249, 250 (¶5) (Miss. Ct. App. 2023) (citing *Sims v. State*, 329 So. 3d 528, 534 (¶20) (Miss. Ct. App. 2021)). "We are not required to decide—and in fact we must refrain from deciding—whether we think the State proved the [requisite] elements. Rather, we must decide whether a reasonable juror could rationally say that the State did." *Poole v. State*, 46 So. 3d 290, 293-94 (¶20) (Miss. 2010). In so doing, "this Court views the evidence in the light most favorable to the State to determine if any rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Benthall v. State*, 311 So. 3d

---

[2] The evidentiary hearing was originally set for November 29, 2021, but was continued because Rodgers did not receive proper notice.

697, 703 (¶20) (Miss. Ct. App. 2021) (citing *Martin v. State*, 214 So. 3d 217, 222 (¶15) (Miss. 2017)).

¶11.    To prove a defendant is guilty of conspiracy, the State is required to show that, "two (2) or more persons conspire[d] . . . to commit a crime[.]" Miss. Code Ann. § 97-1-1 (Rev. 2014).  In this case, those persons are Rodgers and his alleged co-conspirator Moncure.  The State needed to show an agreement between them, but it did not have to be expressed or formal.  *Moore v. State*, 105 So. 3d 390, 394 (¶15) (Miss. Ct. App. 2012) (citing *Morgan v. State*, 741 So. 2d 246, 255 (¶27) (Miss. 1999)). Rather, "[a] conspiracy can be prove[d] by the acts and conduct of the alleged conspirators and can be inferred from the circumstances." *Id.*  However, the indictment alleged—and hence, the State was required to prove—that the alleged conspiracy occurred in Madison County.  *See Anderson v. State*, 973 So. 2d 1044, 1047 (¶11) (Miss. Ct. App. 2008) (citing *Hobson v. State*, 730 So. 2d 20, 28 (¶29) (Miss. 1998)) (holding "the State is required to prove each element of the indicted offense beyond a reasonable doubt").[3]

¶12.    If Rodgers was the only party privy to the impending sale of drugs, there can be no conspiracy at all.  In analyzing whether this was the case, we look primarily to Moncure's testimony[4] to determine whether she was aware of the crime she was allegedly conspiring to

---

[3] While the proof showed that Rodgers did have 21.82 grams of methamphetamine in his proximity at the time of his arrest, there was no proof that those 21.82 grams were part of any conspiracy to "sell, distribute, or transfer" drugs in Madison County.

[4] This Court acknowledges that "issues of weight and credibility of witness testimony are within the sole province of the jury as fact-finder." *Lyles v. State*, 12 So. 3d 552, 555 (¶15) (Miss. Ct. App. 2009) (quoting *King v. State*, 798 So.2d 1258, 1262 (¶14) (Miss. 2001)).  However, we note that it *is* for this Court to decide whether the evidence presented

commit with Rodgers. Moncure testified she was aware, when picking up Rodgers's MoneyGram at Walmart, that the transaction was related to drug sales. But from there, she testified to dropping off the cash with Rodgers at his home before he asked her for a ride. He never informed Moncure where they were going and instructed her only "to drive[,] and whenever [they] came to a certain point[,] . . . he'd tell [her] to turn."

¶13. In addition, Moncure stated that she had no knowledge of the methamphetamine Rodgers brought into her vehicle on the night of their arrest. According to her testimony and initial statement to the authorities, the first time she even saw the methamphetamine was when Rodgers "slammed it" on the dashboard while she was driving. The only evidence in which she stated otherwise was her second statement, made with Rodgers present, that she later recanted. Further, the jury was presented with the audio of Rodgers's jail call to Moncure in which he told her he wished she had taken the blame; Moncure stated clearly that she "didn't know anything that was going on."

¶14. "[T]he elements of a conspiracy *require recognition on the part of the conspirators that they are entering into a common plan and knowingly intend to further its common purpose*." *Berry v. State*, 996 So. 2d 782, 786-87 (¶12) (Miss. 2008) (emphasis added) (quoting *Sanderson v. State*, 883 So. 2d 558, 560 (¶8) (Miss. 2004)). In other words, conspiracy, above all, requires a "union of the minds" of the conspirators. *Franklin v. State*, 676 So. 2d 287, 288 (Miss. 1996). In *Franklin*, two teenage co-defendants, Franklin and

to the jury was *sufficient* to support Rodgers's conviction of conspiracy. *See Bridges v. State*, 790 So. 2d 230, 235 (¶13) (Miss. Ct. App. 2001) (stating that weight and sufficiency are "two separate and distinguishable legal concepts").

Jackson, were charged with the murder of an elderly homeless man and conspiracy to commit murder. *Id*. On the night of the murder, Franklin and Jackson had gone along with three other young men to "mess with" the victim, throwing rocks at and kicking him numerous times. *Id*. Meanwhile, the oldest boy in the group left the scene to retrieve a gun; when he returned, he shot and killed the victim. *Id*. Although Franklin and Jackson were acquitted of the murder charges, both were convicted of conspiracy to commit murder. *Id.*

¶15. On appeal, the defendants argued that there was simply not enough evidence to prove they were part of any agreement to murder the victim because they only agreed to go along and "mess with" him. *Id*. The Mississippi Supreme Court agreed, emphasizing that, "[b]y its very nature, conspiracy is a joint or group offense requiring a concert of free will." *Id*. (internal quotation marks omitted) (quoting *Flanagan v. State*, 605 So. 2d 753, 757 (Miss. 1992)). Because neither Frankin nor Jackson had "recognized that, by 'messing with' the victim, he had entered into a [conspiracy] to commit murder[,]" neither person could be guilty of conspiracy. *Id*. at 289.

¶16. We find the facts of *Franklin* similar to the instant case. *Id*. Our review of Moncure's testimony and her statements to authorities make it apparent that she never truly recognized the "conspiracy" she was allegedly part of with Rodgers. She agreed only to give Rodgers a ride to an unknown destination, just as Franklin and Jackson agreed only to go "mess with" the victim they were accused of conspiring to murder. Moncure was also unaware that Rodgers brought methamphetamine into her vehicle. She only realized this when Rodgers threw the drugs on the dashboard in the middle of her driving him to a destination that he had

concealed from her. In her own words, Moncure "didn't know anything that was going on." Again, a key to the crime of conspiracy is each conspirator's knowledge and recognition of the crime they were alleged to have planned to commit. *See Berry*, 996 So. 2d at 786-87 (¶12).

¶17. Further, the indictment alleged that the conspiracy between Rodgers and Moncure took place in Madison County. The only evidence the State presented to the jury that the two were conspiring to sell drugs was the MoneyGram. The evidence was clear that the MoneyGram was picked up from a Walmart in Hinds County, *not* Madison County. After Moncure retrieved it, she drove to Rodgers's home in Yazoo County to drop it off with him. It was there that Rodgers asked Moncure for a ride to an unknown destination. That ride ended with the stop, search, and subsequent arrests of Rodgers and Moncure in Madison County. This sequence of events was inadequate to prove a conspiracy occurred in Madison County (as charged). A rational juror could not have come to the conclusion that Rodgers committed the crime of conspiracy in Madison County. Upon a review of the evidence, this Court agrees with Rodgers that the evidence used to convict him of conspiracy was insufficient. Therefore, the judgment of conviction and sentencing of Count I is affirmed, but the judgment as to Count II is reversed and rendered.

¶18. **AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, McCARTY AND SMITH, JJ., CONCUR. McDONALD, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS AND EMFINGER, JJ., NOT PARTICIPATING.**

10